Wanamaker, J.
This case involves the question of the validity of the will of' the late Phoebe Thompson, of Mt. Vernon, Ohio. The petition was filed in the court of common pleas of Knox county, alleging that a certain paper writing, purporting to be her will, was in fact not her will.
Upon trial had in the court of common pleas the jury found against the will. Error was prosecuted in the court of appeals, which affirmed the judgment below.
Upon the record, there is but one question meriting review. Was the testimony of one C. V. Trott, an attorney at law, who was consulted in that relation by the testatrix in reference to the paper writing, competent ? Those supporting the will offered said Trott as a witness, and sought to introduce the communications of Phoebe Thompson made to him, and his communications to Phoebe Thompson; but particularly the former.
Upon objection the court excluded the communications as being disqualified by Section 11494, General Code of Ohio. Said section of the code, so far as pertinent here, reads:
“The following persons shall not testify in certain respects: 1. An attorney, concerning a communication made to him by his client in that relation, or his advice to his client; * * *. But the attorney * * * may testify b}^ express consent of the client * * *; and if the client * * * voluntarily testifies, the attorney * * * may be compelled to testify on the same subject.”
Is there any room for doubt as to the scope or meaning of this statute? If there is no room for *503 doubt as to its scope and meaning, there is no right to construe, for the judicial right to construe is wholly based upon the presence of doubt as to the meaning of the statute.
There is abundant reason for this rule. Every bar association, state and national, has for years' bemoaned the growing uncertainty and confusion in our laws, much of which the courts themselves are responsible for, by undertaking to make cloud)'’ legislative acts that are clear; by undertaking to place limitations upon legislation that is absolute and unlimited, rendering doubtful the general and all-comprehensive provisions of the statute by reference to some suggested reason for the law. All these rules of construction or interpretation are helpful and illuminating where there is doubt as to the meaning of the statute, but they serve no duty where there is no doubt.
Let us examine the statute. First, it will be observed that in the opening line it is provided, “The following persons shall not testify in certain respects.” The auxilliary “shall” is mandatory and absolute within the “certain respects” enumerated in the statute. These “certain respects” involved in this case are “an attorney, concerning a communication made to him by his client in that relation.” It is admitted on both sides that the testimony directly involved the communication, and it' is admitted further that the communication was in the relation of attorney and client; so that the testimony involved comes squarely within the plain language of this part of the statute. In short, the legislature, wisely or unwisely, has absolutely so far closed the *504 door of all courts to the receipt of these communications, no matter how much light they might throw upon the controversy, no matter how much logical connection they may have with the issue of facts to be proven or disproven.
After closing this door, the legislature undertakes to specify two “certain respects” in which the communication may be offered: 1. “By express consent of the client.” 2. “If the client * * * voluntarily testifies.”
It is conceded by both sides to this controversy that neither one of these respects qualified the communication. Nothing orally or in writing is offered to show any express consent of the client. Neither could such express consent be given at the time of the trial. She was dead, and of course she could not “voluntarily testify.” So the exception to the general disqualification of the communication is impossible in this case.
Now it is urged that this court should read into the statute another exception, to-wit, “that if‘the client be dead, her personal representative or heirs should waive the right for her.”.
This squarely involves so-called judge-made amendments to legislative acts that are otherwise clear and unmistakable as to meaning. ' In reason there is much force in the logic of plaintiff in error as to the relevancy of this testimony; but the statute, which is clear and explicit, expressly says that the attorney shall not testify.
The argument addressed to this court might be addressed to the legislature with persuasive power, and lead to what I believe would be a wholesome *505 amendment; but it is not for this court to make such an amendment. This is solely in the-power of the general assembly.
We are not especially concerned about the decisions in other courts, some of which are contrary to this holding. Each must be based upon the settled practice in that state, or the statute regulating such evidence in that particular state. We have only to do with our own statute, which is clear and comprehensive as to such “communications,” disqualifying them without limitation as to time or character of action. We cannot disregard that disqualification.
But if there were any doubt about Section 11494, Section 11495 absolutely clarifies any such doubt as to the legislative purpose. These two statutes both deal with disqualification of certain witnesses. In short, they are co-related in dealing with.the same general subject-matter. Each is made an exception to the general rule announced in Section 11493, General Code, which reads: “All persons are competent witnesses except those of unsound mind, and children under ten years of age,” etc. These several sections of the statutes, 11493, 11494 and 11495, dealing with the competency and incompetency of witnesses, show that' the legislature had before it this identical subject-matter and. attempted at least to deal intelligently and consistently with it, so as to legislate upon the subject in a plain, practical way, both for the benefit of the public and the profession.
Now in Section 11495, where the legislature undertook to disqualify from testifying certain per *506 sons in certain relations, it undertook to define eight different paragraphs of exceptions to the disqualification, and then closed the section with this general exception to the operation of Section 11495:
“Nothing in the section shall apply to actions for causing death, or actions or proceedings involving the validity of a deed, will, or codicil; and when a case is plainly within the reason and spirit of the next three preceding sections, though not within the strict letter, their principles shall be applied.”
It is surely pertinent to observe that when the legislature had before it Section 11495, and provided that the disqualification should not relate to “actions or proceedings involving the validity of a deed, will, or codicil;” that if it had intended that doctrine which is invoked in this case to apply to Section 11494 it would also have written it into Section 11494.
The claim of the plaintiff in error, boiled down, means this, that this court should now write into Section 11494 the language at the close of Section 11495. This would be a most glaring instance of the supreme court invading the powers of the general assembly of Ohio.

Judgment affirmed.

Nichols, C. J., Jones, Matthias, Johnson, Hougi-i and Robinson, JJ., concur.